**"O"**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| TERESA L. BISHOP, | ) | Case No. SACV 05-01194-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Teresa Bishop seeks judicial review of the Commissioner's final decision denying her application for Supplemental Security Income benefits("SSI"). For the reasons stated below, this matter shall be remanded for further proceedings.

**I.   Factual and Procedural Background**

On February 15, 2000, Bishop applied for SSI benefits, claiming that she became disabled on November 7, 1999, due to spinal impairments and anxiety attacks. (Administrative Record ("AR") 69, 88.) Bishop is currently forty-nine years old. (AR 69.) She has a high school education, and has worked as a substitute teacher, telemarketer, sales

assistant, retail sales clerk, and instructional assistant. (AR 14.) The Commissioner denied Bishop's application initially on May 31, 2000, and upon reconsideration on August 24, 2000. (AR 22, 29.)

A hearing was held before Administrative Law Judge ("ALJ") Keith Varni on October 17, 2001, who issued a decision on October 25, 2001 finding that Bishop was not disabled and therefore not entitled to SSI benefits. (AR 13-17.)  Bishop did not attend the hearing, and the ALJ reached his decision based on the documentary evidence.  Specifically, ALJ Varni found that although Bishop's impairment is "severe" under the governing regulations, she still retained the residual functional capacity to perform light work, including her past employment.  The Appeals Council denied Bishop's subsequent request for review on February 2, 2002. (AR 4.)

Bishop filed an action for judicial review in this Court.  The parties entered into a Stipulation for Remand on October 4, 2002.  The case was remanded to the ALJ with instructions to 1) consider the records from Bishop's treating physician; and 2) re-evaluate the severity of Bishop's alleged mental impairments in light of the medication and treatment she received for her anxiety attacks and depression. (AR 270-71.)

ALJ Varni held a supplemental hearing on June 16, 2003, and on July 14, 2003, again found that Bishop was not entitled to benefits. (AR 240-42.)  The ALJ's short decision failed to comply with either of the remand instructions: ALJ Varni did not consider the records from Bishop's treating physician, nor did he adequately consider the severity of Bishop's mental impairments in light of the medication she was taking.  Moreover, the decision was deficient in one other key regard. As opposed to the first hearing, which Bishop did not attend, Bishop and

2

1   her husband testified at the supplemental hearing.  The July 14, 2003
2   decision summarized their collective testimony in two sentences, then
3   rejected their credibility without giving specific reasons for doing so.

4        Bishop again filed an action for judicial review in this Court, and
5   on June 1, 2004, again pursuant to a stipulation, this Court remanded
6   the case to the Appeals Council, with instructions to remand the case to
7   a new ALJ. (AR 315-16.)  Consistent with this Court's order, the Appeals
8   Council directed the ALJ to: 1) evaluate the credibility of Bishop's
9   complaints as well as any third-party evidence or testimony; 2) evaluate
10  the severity of Bishop's alleged mental impairments in light of the
11  medication and treatment she received for panic attacks, depression, and
12  anxiety; and 3) consider the records from Bishop's treating physician.[1]
13  (AR 330-32.)

14       On April 19, 2004, a hearing was held before ALJ John Belcher.  (AR
15  617.)   Bishop and two medical experts - Samuel Landau, M.D., an
16  Internist, and William Soltz, Ph.D., a Clinical Psychologist -
17  testified.  Bishop's husband was not present at the hearing.  On August
18  22, 2005, ALJ Belcher issued a decision that rejected Bishop's testimony
19  and found that her physical and mental impairments were not disabling
20  under the Social Security Act, and that accordingly, she was not
21  entitled to SSI benefits.  (AR 281-85.)  Bishop filed a third action for
22  judicial review of the Commissioner's decision in this Court on December
23  7, 2005.

24  \\

25

---

26      [1] The Appeals Council also directed the ALJ to "[m]ake findings as
27  to the physical and mental demands of the claimant's past jobs and
    reconsider whether the claimant can perform her past relevant work."
    (AR 331.)   Bishop does not dispute that the ALJ complied with this
28  directive or raise any claims regarding this issue.

**II.   Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996).  It is more than a scintilla, but less than a preponderance.  *Reddick*, 157 F.3d at 720.  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  *Id.*  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  *Id.* at 720-21.

**III. Discussion**

Bishop claims that the ALJ: 1) failed to consider the lay testimony of William Bishop, and thereby violated the Appeals Council's remand order; 2) failed to give specific, legitimate reasons for disregarding Bishop's Global Assessment of Functioning ("GAF") score of 50; and 3) did not properly consider the opinion of Dr. Iwan S. Ong, Bishop's treating physician, that Bishop is disabled.  (Jt. Stip. 3.)

\\

\\

4

## A.   Testimony of William Bishop

Bishop maintains that ALJ Belcher committed the same error as ALJ Varni by omitting any discussion of her husband's testimony or written statements.   In ALJ Varni's July 14, 2003 decision, he summarily dismissed the testimony of Bishop and her husband as not credible.  (AR 241-42.)  Because of the ALJ's inadequate evaluation of the Bishops' lay testimony, this Court remanded the case to the Appeals Council which, pursuant to this Court's order, instructed the ALJ to "[f]urther evaluate the credibility of the claimant's subjective complaints..., including any third party evidence or testimony."  (AR 316, 331.) Despite this directive, ALJ Belcher did not discuss William Bishop's prior testimony or written statements.[2]

Bishop asks for relief based on the ALJ's failure to comply with this directive.   The Regulations require that "[t]he [ALJ] shall take any action that is ordered by the Appeals Council...."[3]   20 C.F.R. §

---

[2]   Curiously, at the beginning of his written decision, ALJ Belcher noted that this Court directed him to "address the testimony and written statements by the claimant's spouse." (AR 282.) He simply failed to do so.

[3]   Instead of citing the relevant regulation, Bishop states that "[t]he Ninth Circuit held that 'evasion of the full effect of the remand order justified further remand for the required analysis...because the ALJ is bound to follow the Appeals Council's order "and may not take any additional action that is not inconsistent with the Appeal Council's remand order."'" (Jt. Stip. 6) (citing *Ruiz v. Apfel*, 24 F. Supp.2d 1045, 1050 (C.D. Cal. 1998)).

Setting Bishop's technical citation errors aside, her use of the this excerpt is problematic on several fronts.   First, the quoted opinion was issued by the district court, not the Ninth Circuit. Second, although the quoted text is purportedly taken from *Ruiz*, the first clause is not contained in that opinion; it appears that Bishop inserted additional language to serve her argument.   Third, *Ruiz* cites 20 C.F.R. § 404.977, which applies to Disability Insurance claims, not SSI benefits.   Granted, the terms of § 404.977 and § 416.1477 are identical, but that should not be left to the Court to discover.   Fourth and finally, *Ruiz* misquotes § 404.977, inserting a conspicuous "not"

5

416.1477.  Moreover, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  However, where the ALJ fails to properly discuss competent lay testimony favorable to the claimant, a reviewing court may "consider the error harmless [if] it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

On August 8, 2000, William Bishop filled out a Daily Activities Questionnaire concerning his wife. (AR 119-24.)  In response to questions about Teresa Bishop's physical activities, her husband stated that "sometime [*sic*] she need [*sic*] help in and out of the shower; most of the time her shoes need to be tied for her;" and "she can only get out [to social activities] for short periods of time because it is to [*sic*] uncomfortable to sit to [*sic*] long or stand to [*sic*] long."  In response to questions about Bishop's mental and emotional health, her husband stated that she "sometimes [has] mood swings but generally easy going but sometimes irritable;" she has problems concentrating or remembering and "forgets little things and facts;" she sometimes has

_____

into the regulation and creating a nearly unintelligible triple-negative statement.  While this error is contained in the *Ruiz* opinion, Bishop should not blindly submit the same error to this Court.

The manner in which Bishop's counsel employed this authority is at best extremely careless and at worst an intentional attempt to mislead the Court.  The Court will assume it is the former.  But Bishop's counsel is reminded that he is an officer of the Court and that his misrepresentations to this Court could result in sanctions in the future.

trouble finishing a job; and "she has[] panic attacks for no apparent reason."

Mr. Bishop also testified at the June 16, 2003 hearing before ALJ Varni, stating that his wife has some days where "she can't even get out of bed" because of the pain she experiences; that she has some problems concentrating; and that she has some crying spells "[w]hen she gets depressed." (AR 250-51.)

ALJ Belcher concluded that Plaintiff's allegations of pain and discomfort were out of proportion to the medical evidence. (AR 284.) Having rejected her testimony, the ALJ found that she possessed the residual functional capacity to perform light work: carry up to twenty pounds occasionally and ten pounds frequently, stand for up to two hours of an eight-hour workday, and sit for up to six hours of an eight-hour workday. (AR 282.) The ALJ then used this residual functional capacity assessment in framing the hypothetical question to the vocational expert which provided, in part, the basis for his ultimate finding of not disabled. (AR 666.)

If Mr. Bishop's statements are fully credited, this Court can not confidently conclude that a reasonable ALJ could not have reached a different disability determination. Mr. Bishop's statements corroborated his wife's complaints and confirmed that the pain can be so severe that she is unable to get in and out of the shower, tie her own shoes, or even get out of bed. A reasonable ALJ who believed Mr. Bishop's statements could have arrived at a different credibility determination as to Plaintiff, a different residual functional capacity assessment and a different disability determination.

The case must again be remanded to permit the ALJ to expressly consider Mr. Bishop's testimony. The ALJ may only disregard his

statements if the ALJ provides a legitimate basis for doing so. *See* SSR 96-7p.

**B.   Bishop's GAF Score**

Bishop contends that ALJ Belcher also erred and failed to comply with the Appeals Council's remand order by omitting any discussion of her GAF score of 50. (Jt. Stip. 8-11.) The GAF Scale provides a measure for an individual's overall level of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Rev. 2000). The Scale "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *Id.* On July 25, 2000, Samuel Dey, M.D., reported Bishop's GAF score as "Current: 50; past year: 50." (AR 175.) The record does not reveal any subsequent visits to Dr. Dey. A GAF range of 41-50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, *supra*, 34. Sohini Parikh, M.D., an examining consultant, evaluated Bishop on January 11, 2003, and reported Bishop's GAF score as 70. (AR 501-06.) A 70 is indicative of "some difficulty in social, occupational, or school functioning...but generally functioning pretty well...." Am. Psychiatric Ass'n, *supra*, 34. The record does not contain any evidence relating to Bishop's apparent improvement between her visits to Drs. Dey and Parikh.

While "[t]he [ALJ] shall take any action that is ordered by the Appeals Council," 20 C.F.R. § 416.1477, Bishop mistakenly asserts that the September 29, 2004, remand order directed the ALJ to consider the

8

GAF score.  Although the Appeals Council discussed the omission in the body of the order,[4] it specifically directed the ALJ to "[r]e-evaluate the severity of the claimant's alleged mental impairments in light of the medication and treatment she received for panic attacks, depression, and anxiety."  (AR 331.)   In evaluating the severity of a claimant's mental impairments, a GAF score may help guide an ALJ's determination, but an ALJ is not bound to consider it.  *See Howard v. Comm'r of Soc. Sec. Admin.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.  Thus the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").  ALJ Belcher did not err by disregarding Bishop's earlier GAF score of 50.

Moreover, ALJ Varni *did* in fact address Dr. Dey's report in both of his decisions: in the first decision, ALJ Varni stated that the psychiatrist's one-page report "contains no severe clinical findings and the GAF is unsupported by anything found clinically or even related by claimant."  (AR 15.)  After the first remand, ALJ Varni revisited the Dr. Dey's report and stated that the "global assessment of functioning [is] unsupported by the clinical evaluation or anything else in the record."  (AR 241.)  Bishop did not challenge ALJ Varni's reasons for discounting Dr. Dey's findings in her two previous appeals, and she may not raise them for the first time now.

\\

---

[4]  The Appeals Council's first remand order, entered on November 27, 2002, directed the ALJ to "further evaluate...the findings and GAF assessment of 50 made by the consulting psychiatrist...."  (AR 274.) But in the September 29, 2004 order that applies to this decision, the discussion of the GAF score does not amount to a directive.

**C.    Medical Opinion of Dr. Iwan Ong**

Bishop also claims that ALJ Belcher erred by improperly discounting the opinion of Iwan Ong, M.D., a treating physician.  Bishop argues that the ALJ "misstated the evidence" when he stated his impression that Dr. Ong "seems to make decisions almost entirely based on the claimant's own subjective complaints."  (AR 284; Jt. Stip. 13.)  If this served as the sole basis for rejecting Dr. Ong's opinion, then the ALJ would likely have erred.  But the ALJ's impression does not stand alone; he goes on to give specific and legitimate reasons for his conclusion.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  If it is contradicted by another physician, the ALJ may not reject the treating physician's opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  *Id.*  The ALJ may use a nonexamining physician's opinion as substantial evidence, provided that the nonexamining physician based his opinion on independent clinical findings that did not provide the basis for the treating physician's opinion.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995.)

Here, ALJ Belcher did not err in discounting Dr. Ong's opinion.  The ALJ relied primarily on the testimony of Dr. Samuel Landau, a nonexamining physician.  Dr. Landau's testimony was based on reports from three other physicians - Drs. Otto, Roche, and Kumar - which makes his opinion "substantial evidence" under *Andrews*.  (AR 632-45.)  The ALJ

10

also pointed to Dr. Kumar's examination of Bishop as a basis for discounting Dr. Ong's opinion, noting that:

> [O]n January 19, 2003, [Bishop's] gait was normal and no gait deviation was noted. [Bishop] was able to walk without any assistive device in the examining room and exhibited normal cervical spine range of motion and no clinical evidence of radiculopathy. While [Bishop's] lumbar spine range of motion was restricted, there was no clinical evidence of radiculopathy and upper and lower extremity examination demonstrated full range of motion of all the joints. [Bishop] was without any neurological deficit.

(AR 284.) The ALJ's decision to discredit Dr. Ong's finding rested on specific, legitimate reasons that were based on substantial evidence in the record.

## IV.   Conclusion

For the reasons stated above, the Court concludes that the ALJ erred by failing to provide a basis for disregarding William Bishop's written statements and testimony.

Accordingly, **IT IS HEREBY ORDERED** that this matter be **REMANDED** to the defendant Commissioner for the specific purpose of evaluating the credibility of William Bishop's written statements and testimony in accordance with the regulations and SSR 96-7p.

DATED:  October 19, 2006        */s/ Marc L. Goldman*

                                _____
                                MARC L. GOLDMAN
                                United States Magistrate Judge

11